IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| A.W. <br> A minor child by and through her <br> parents and next of friends, Rex and <br> Teresa W., <br>     Plaintiff, <br> v. <br> JEFFERSON COUNTY BOARD OF <br> EDUCATION, et al., <br>     Defendants. | CV-06-BE-1818-S |

## MEMORANDUM OPINION

This case comes before the court on the motion for summary judgment (doc. 36) filed by Defendants Jefferson County Board of Education, Randy McCarty, and Ann Swanson. In their response, Plaintiffs "do not contest the grant of partial summary judgment as to all claims against Ann Swanson . . . and as to the state law claims for negligent hiring and retention against Randy McCarty." (Pls.' Br. iii-iv). Therefore, the court will grant summary judgment as to those claims. Further, for the reasons stated below, the court will grant summary judgment as to the remaining claims against McCarty and all claims against the Board. Accordingly, the Board, McCarty, and Swanson will be dismissed from this action.

### I. FACTUAL BACKGROUND[1]

Beginning in November 2004, A.W., an eighth-grader at Pittman Middle School, was subjected to inappropriate conduct by, and engaged in an inappropriate relationship with,

---

[1] Many of the material facts of this case are undisputed. This section includes only the facts relevant to the court's disposition of the current motion and presents the facts in a light most favorable to the Plaintiffs.

Defendant Charles Andrews, a computer instructor and bus driver at the school. Andrews taught A.W. when she was in the sixth grade, but A.W. did not have class with Andrews at the time of this improper conduct.

On January 10, 2005, a male sixth grade student approached Brett Kirkham, the assistant principal, and indicated that he had a "secret" to tell him. Kirkham requested that the student report to his office to produce a written statement. The student indicated that Andrews and an eighth-grader named "Amy" were "making out" in Andrews' classroom. Kirkham shares an office with Deputy Gwen Hayes, the Jefferson County Sheriff assigned to the school, and Kirkham read the student's statement to Hayes. After dismissing the student, Kirkham delivered the statement to Principal McCarty.

McCarty immediately called the male student to his office. He questioned the student regarding what conduct he meant by the phrase "making out." The student responded that he meant rubbing the girl's back, knee, and thigh. The male student indicated that four other sixth grade boys may have also witnessed the incident; McCarty then questioned those students. One of those student stated that Andrews had his hand over "Amy's" hand on the computer mouse; another stated that Andrews had his hand on her back or chair; yet another indicated that Andrews touched "Amy's" leg; the final student reported that he did not see anything. McCarty had each student write his statement. Prior to these allegations, neither the Board nor any Pittman official had received complaints of this nature about Andrews.[2]

McCarty apprised Jimmie Pearson, the Board's School Group Director for Pittman, of the

---

[2] After Andrews' inappropriate relationship with A.W. came to light, several parents came forward with similar allegations from three to four years before, but Plaintiffs admit that the Defendants did not have knowledge of those allegations prior to February 21, 2005. (*See* Pls.' Br. ¶ 81).

situation. Pearson told McCarty to identify "Amy." On January 11, 2005, McCarty located photographs of all students named "Amy" and asked one of the purported witnesses to look through the photos. The student identified A.W. as the girl he saw with Andrews.

McCarty asked Swanson, a guidance counselor, to observe his interview of A.W. to assist in evaluating her responses to his questions. A.W. stated that nothing inappropriate or out of the ordinary occurred between her and Andrews. She informed McCarty that she was in Andrews' classroom at the time the sixth grade students saw her to help install software on the computers. Given A.W.'s unequivocal responses without hesitation, the detailed nature of her responses, her confident demeanor, eye contact, and apparent puzzlement at being questioned, McCarty and Swanson concluded that A.W. was honest and that nothing inappropriate had occurred.[3]

Nonetheless, McCarty interviewed Andrews about the incident. Andrews produced a plausible explanation: when working with students on computers, an instructor will often put his hand on the back of the chair and lean over to operate the mouse. At McCarty's request, Andrews produced a written statement. McCarty reminded Andrews to always conduct himself in a professional manner and to avoid any situation in which a student could misconstrue his actions. McCarty updated Pearson on the situation, and together they agreed that the appropriate course of action was to monitor Andrews' classroom; they were not, however, monitoring specifically for sexual harassment, but instead for proper classroom management because both Andrews' and A.W.'s stories indicated that Andrews had used class time for computer maintenance. As part of the ordinary course of business, Pearson informed the Superintendent of the investigation and results. McCarty also discussed the situation with Hayes.

---

[3] Plaintiffs emphasize that A.W. lied to McCarty only because Andrews told her to do so, and she felt threatened. Although Andrews' conduct is deplorable, the <u>reason</u> that A.W. lied to McCarty is irrelevant to his or the Board's liability.

On February 21, 2005, two female eighth grade students informed McCarty that their friend, A.W., and Andrews were involved in a relationship. McCarty asked the students for written statements and then requested that A.W. speak with him. A.W. denied her friends' allegations and, in a written statement, denied involvement with Andrews. McCarty told A.W. that he planned to call her parents. Later that day, A.W. informed Swanson that she and Andrews were in fact involved in an inappropriate relationship. Swanson summoned McCarty, and A.W. repeated her admission and produced another written statement.

McCarty contacted A.W.'s mother, and then Pearson. A.W.'s parents notified the police. Because Andrews was a tenured employee who could only be removed by procedures enumerated in Alabama statute, McCarty contacted Pearson to initiate the process to remove Andrews from the school. Andrews completed his bus route that afternoon, but McCarty instructed him not to return to work the next day. The following morning, Phillip Hammonds, the Superintendent, placed Andrews on paid administrative leave. He directed Pearson to work with the Board's attorney to investigate the claim. The next day, the Department of Human Resources ("DHR") was notified. Andrews subsequently reached a plea agreement with the prosecutor, received a suspended jail sentence, and registered as a sex offender. The Board never effectuated termination of Andrews because, after pleading guilty, Andrews also resigned from his position, repaid the salary he received while on administrative leave, and surrendered his teaching certificate.

During the investigation, A.W. and her family revealed A.W.'s journal, which chronicled her relationship with Andrews and indicated that she had feelings for Andrews. She had also saved several notes and emails between herself and Andrews. A.W. recounted multiple telephone conversations. Many of these written and verbal communications were sexual in

nature.  A.W. revealed that she had voluntarily visited Andrews' classroom regularly; they exchanged gifts and photos; Andrews touched her back, buttocks, and legs; and they kissed on several occasions.  A.W. and Andrews had taken precautions to conceal their relationship.

A.W., by and through her parents, then filed this action for damages.  Plaintiffs stated a Title IX cause of action against the Board; claims under § 1983 against the Board, McCarty, Swanson, and Andrews; invasion of privacy against Andrews; negligence and/or wantonness against McCarty, Swanson, and Andrews; and negligent and wanton hiring and/or retention against McCarty and Swanson.  Plaintiffs also named as a Defendant the "Jefferson County School District," which Defendants claim is not a legal entity.  Plaintiffs have made no mention of "the District" in any pleadings or status reports since the initial complaint; thus, the court assumes that Plaintiffs do not dispute that it is not a legal entity.  The Board, McCarty, and Swanson moved for summary judgment as to all claims against them.  In response, Plaintiffs do not contest partial summary judgment as to <u>all claims against Swanson</u> and the <u>state law negligence claims against McCarty</u>.  The court, therefore, must only address the Title IX claim against the Board and the § 1983 claims against the Board and McCarty.

## II.  STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact exist.  Fed. R. Civ. P. 56.  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

In reviewing the evidence submitted, "the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). Disagreement between the parties is not significant, however, unless the disagreement presents a "genuine issue of material fact." *Id.* at 247-48. A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 251-52.

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment is mandatory against a party who fails to show the existence of an element essential to the proof of its case at trial. *Celotex*, 477 U.S. at 322. However, the nonmovant can defeat summary judgment by showing *either* a genuine issue of material fact *or* that the movant is not entitled to judgment as a matter of law.

### III. DISCUSSION

**A.    Title IX Claim Against the Board**

Title IX prohibits discrimination "on the basis of sex . . . [by] any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Money damages are available under Title IX for cases involving a teacher's sexual harassment of a student. *Franklin v. Gwinnett County Pub. Schools*, 503 U.S. 60, 65, 74-76 (1992). However, a school district is not liable for teacher-on-student sexual harassment "<u>unless</u> an official of the school district who

at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 277 (1998) (emphasis added).

To survive summary judgment, therefore, a Title IX plaintiff must establish two things: "(1) a school district official with the authority to take corrective measures had <u>actual notice</u> of the harassment; <u>and</u> (2) the official with such notice was <u>deliberately indifferent</u> to the misconduct." *Sauls v. Pierce County School Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) (emphasis added). A school district is not deliberately indifferent simply because its efforts are ultimately ineffective at preventing sexual harassment. *Id.* at 1285. Rather, deliberate indifference is a response to reports of misconduct that is "clearly unreasonable in light of the known circumstances." *Davis v. Monroe County Bd. of Educ.*, 256 U.S. 629, 648 (1999).

The parties in this case dispute when the Board received actual notice. The Board would be hard pressed to argue that it did not have actual notice after February 21, 2005, but it does vehemently deny actual notice prior to that date. Plaintiffs, on the other hand, contend that the January 2005 reports from four sixth grade boys was sufficient despite A.W.'s and Andrews' denials at that time. Were the court to examine this issue, it would likely conclude that the Board did not have actual notice based on the January 2005 complaints. The court will not, however, address the actual notice issue in detail because, regardless of whether the Board had actual notice in January 2005 or February 2005, Plaintiffs' Title IX claim fails because they cannot establish that any official acted with deliberate indifference at either of these times. Rather, officials sufficiently responded to each report of misconduct they received.

The case of *Sauls v. Pierce County School Dist.*, 399 F.3d 1279 (11th Cir. 2005), bears a striking resemblance to the current case. In that case, the principal received a complaint in 1998

about a potentially inappropriate relationship between a female teacher and a male student. *Sauls*, 399 F.3d at 1282. The principal interviewed the male student, the male student's mother, and the teacher. *Id.* The teacher and student denied any wrongdoing, and the principal determined that their denials were credible, as did two assistant principals who observed the interview of the student. *Id.* The principal warned the teacher "to always keep her conduct with students beyond reproach and to avoid any situation that could be viewed as inappropriate." *Id.*

In March 2001, the assistant superintendent of the school system received an anonymous email alleging that the same teacher had inappropriate relationships with specific named students who had either graduated or dropped out of school. *Sauls*, 399 F.3d at 1281. The assistant superintendent and the same principal interviewed the teacher, who again strongly denied any misconduct. *Id.* at 1282. The assistant superintendent warned the teacher once again to avoid even the appearance of impropriety and any suspect situations. *Id.*

By July 2001, the assistant superintendent had been promoted to superintendent. In that capacity, she received a phone call from a "concerned citizen" claiming to have seen the same teacher's vehicle parked in the woods beside a current student's vehicle. *Sauls*, 399 F.3d at 1282. The superintendent relayed the allegation to the board of education, the local police department, and the Professional Standards Commission, the Georgia entity responsible for investigating allegations of unethical behavior by educators. *Id.* The superintendent directed the school's new principal to prevent any unnecessary contact between the teacher and student and to report any suspicious behavior. *Id.* The new principal interviewed the student, who denied any inappropriate relationship with the teacher. *Id.*

In December 2001, a substitute teacher discovered correspondence between the student and teacher, and an inappropriate relationship soon came to light. When confronted with the

-8-

note, the teacher resigned and subsequently surrendered her teaching certificate. *Sauls*, 399 F.3d at 1287. The student's parents filed a complaint alleging violations of Title IX and § 1983. The district court granted summary judgment for the school district on both claims. *See id.* at 1283. On appeal, the Eleventh Circuit Court of Appeals affirmed.

The Court of Appeals relied heavily on its earlier decision, *Davis v. Dekalb County School District*, 233 F.3d 1367 (11th Cir. 2000), in which it examined and applied the deliberate indifference standard. The Court of Appeals first noted that the principal's response to the October 1998 allegation was not deliberately indifferent: he interviewed the student and teacher separately; his determination of credibility was supported by other observers; he interviewed the student's mother; he directed the teacher to avoid situations that could be misconstrued; and he notified his superior, the assistant superintendent. *Sauls*, 399 F.3d at 1286. The Court of Appeals then reached the same conclusion regarding the response to the March 2001 complaint: the school district was not deliberately indifferent where the assistant superintendent confirmed that none of the named students still attended the school, she interviewed the principal about the teacher's behavior with students, interviewed the teacher, and again admonished the teacher to avoid the appearance of impropriety. *Id.*

Finally, the Court of Appeals held that the school district's response to the July 2001 phone call, which alleged that the student's and teacher's vehicles were parked together in the woods, was not deliberately indifferent. The superintendent contacted the board of education, the local police department, and the state entity responsible for investigating unethical conduct. *Sauls*, 399 F.3d at 1287. She then instructed the principal to monitor the teacher and report any suspicious activity. *Id.* The principal separately interviewed the teacher and student, both of whom denied any illicit relationship. *Id.*

The current case is not very different. After receiving the initial allegations from several sixth grade boys, McCarty commenced an investigation. He took written statements from the students, ascertained A.W.'s identity, and interviewed A.W. and Andrews separately. He asked Swanson to observe the interview with A.W., and they concurred that A.W.'s denial of any relationship or inappropriate touching was credible. Both she and Andrews provided plausible innocent explanations for what the sixth grade students may have observed. McCarty took a written statement from Andrews and advised him to avoid situations that could be misconstrued as inappropriate behavior. McCarty notified his superior, and they decided to monitor Andrews' classroom, particularly with respect to classroom management (rather than sexual misconduct). Plaintiffs argue that McCarty <u>could have</u> done more. Hindsight, as usual, is 20/20. The relevant question, however, is not whether McCarty could have taken additional steps that would have been more effective, but whether his and the Board's response was, in fact, "<u>clearly unreasonable</u> in light of the known circumstances." *Davis*, 256 U.S. at 648 (emphasis added); *see also Sauls*, 399 F.3d at 1285. Under *Sauls* and *Davis*, McCarty's and the Board's response to the January 2005 allegations was not clearly unreasonable and, therefore, did not constitute deliberate indifference.

Neither McCarty nor any Board official received any further complaints until A.W.'s friends approached McCarty on February 21, 2005. After taking their written statements, McCarty again took immediate action. He questioned A.W., who denied an inappropriate relationship and executed a written statement to that effect. When she informed Swanson and McCarty later that same afternoon that she was lying and that she did in fact have an inappropriate relationship with Andrews that they had made efforts to conceal, McCarty instructed Andrews not to return to school after he completed his bus route. McCarty then called

A.W.'s mother. The following morning, Hammonds placed Andrews on administrative leave. In light of these prompt and adequate corrective measures, this court cannot conclude that the Board or McCarty was deliberately indifferent to the February 2005 allegations.

In summary, Plaintiffs' Title IX claim fails under the deliberate indifference standard. Most of the factual circumstances surrounding the Board's and McCarty's response to the January 2005 and February 2005 allegations are undisputed. Even drawing all reasonable inferences from these facts in favor of Plaintiffs, they cannot create genuine issues of material fact that the Board acted with deliberate indifference.

### B. Section 1983 Claim Against the Board

Like Title IX, section 1983 does not impose liability on a governmental entity such as the Board under a theory of *respondeat superior*. *Sauls*, 399 F.3d at 1287 (citing *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)). Rather, a plaintiff must identify a "policy" or "custom" that caused a deprivation of federal rights. *Davis*, 233 F.3d at 1375. In its recitation of relevant facts above, the court did not recite those regarding the Board's policies or customs concerning sexual harassment. The Board's policies and customs are irrelevant to resolution of the current motion because even assuming Plaintiffs could show a policy or custom that caused a constitutional deprivation, they have a greater hurdle to overcome: they must still show the requisite degree of culpability -- *i.e.*, that the Board's failure to prevent a deprivation of federal rights was <u>deliberately indifferent</u> to its known or obvious consequences. *Id.* at 1375-76.

As stated at length in the court's discussion of Plaintiffs' Title IX claim above, the record contains no evidence that Defendants were deliberately indifferent to information that should have put them on notice of Andrews' misconduct. Accordingly, the court will grant the Board's motion for summary judgment on Plaintiffs' § 1983 claim. *See Sauls*, 399 F.3d at 1288

(affirming summary judgment on § 1983 claim where plaintiffs' failed to show deliberate indifference under Title IX claim); *Davis*, 233 F.3d at 1376 (same).

### C. Section 1983 Claim Against McCarty

A § 1983 claim can stand against a supervisory official in his individual capacity when the supervisor <u>personally participates</u> in a constitutional violation <u>or</u> where a <u>causal connection</u> exists between the actions of the individual and a constitutional violation. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). A plaintiff may establish a causal connection in two ways: (1) the official should have been on notice of the need to correct unconstitutional conduct by "a history of widespread abuse" that is "obvious, flagrant, rampant and of continued duration," *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); or (2) the official imposed an improper custom or practice that constituted deliberate indifference to constitutional rights. *Hartley*, 193 F.3d at 1269.

Plaintiffs here do not – and could not – claim that McCarty personally participated in the alleged constitutional violation. Thus, they must show a causal connection in one of the two ways enumerated above. In their opposition to Defendants' motion for summary judgment, Plaintiffs give nary an argument for such a causal connection, instead simply relying on their contention that "[t]here is a jury question on the issue of deliberate indifference." (*See* Pls.' Br. 20). As discussed at length in the court's analysis of the Title IX claim, Plaintiffs' assertion is simply incorrect. Under no view of the evidence was McCarty deliberately indifferent.

Likewise, the evidence does not even imply a history of widespread abuse that should have put McCarty on notice. Nothing in the record indicates that McCarty received any

allegations or complaints about Andrews prior to January 2005.[4]  Andrews and A.W. took steps to conceal the relationship at all times until February 2005.  McCarty's investigation in January 2005 failed to discover any evidence to support the vague allegations by the sixth grade students; instead, he discovered an innocent explanation for what the students may have witnessed.  This single, isolated, unsubstantiated incident is not the type of obvious and flagrant conduct that should have put McCarty on notice of unconstitutional conduct.  Nor have Plaintiffs identified that McCarty, as principal, had any policy in place that could have led Andrews to believe that sexual harassment of a student was permitted at Pittman.

Because Plaintiffs have not identified any evidence of a causal connection between McCarty's actions and the alleged constitutional violation, the court will grant McCarty's motion for summary judgment on the § 1983 claim against him.  In addition, this analysis overlaps greatly with the qualified immunity issue that McCarty raised.  The court need not delve into all the nuances of that issue; it is enough to say that, assuming A.W. had a constitutional right not to be sexually harassed by a teacher, McCarty did not deprive her of that right for the reasons discussed above, and, therefore, he is entitled to qualified immunity.

## IV.  CONCLUSION

For the reasons set forth above, the court concludes that the Board and McCarty are entitled to summary judgment as to the Title IX and § 1983 claims against them.  In addition, because Plaintiffs acquiesce in summary judgment in favor of McCarty as to the remaining claims against him and in favor of Swanson as to all claims against her, the court will grant Defendants' motion in its entirety, and dismiss with prejudice all claims against the Board,

---

[4] As noted above, Defendants did learn of other allegations <u>after</u> Andrews' conduct with A.W. surfaced.

-14-

McCarty, and Swanson. The court will enter a separate order consistent with this memorandum opinion.

DATED this 16th day of January, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE